1

2

3

4

5

6                          **UNITED STATES DISTRICT COURT**

7                              **DISTRICT OF NEVADA**

8

GINA GANN,                              )
9                                       )
                        Plaintiff,      )
10                                      )          3:12-cv-00142-RCJ-VPC
          vs.                           )
11                                      )
J.C. PENNEY CORP. et al.,               )          **ORDER**
12                                      )
                        Defendants.     )
13  _____ )

14        This case arises out of the termination of an employee in violation of the Family and

15   Medical Leave Act ("FMLA").  Defendant has moved to dismiss and to compel arbitration.  For

16   the reasons given herein, the Court grants the motion.

17   **I.       FACTS AND PROCEDURAL HISTORY**

18        Plaintiff Gina Gann worked for Defendant J.C. Penney Corp. ("Penney's") for more than

19   one year and for more than 1250 hours in the year preceding her leave pursuant to the FMLA.

20   (*See* Am. Compl. ¶¶ 3, 16–17, Apr. 16, 2012, ECF No. 3).  Plaintiff took medical leave for a

21   serious health condition from June 15, 2011 to July 10, 2011, but although Plaintiff's doctor

22   suggested she spend additional time on medical leave, Penney's refused to permit her any

23   additional leave and fired her for being unable to work. (*See id.* ¶¶ 7–13).

24        Plaintiff sued Penney's in this Court under the FMLA.  The Amended Complaint ("AC")

25   adds two Defendants: (1) William Schipper, Gann's supervisor, against whom Gann makes no

1  particular allegations; and (2) Wendy Curry, an employee of non-party PowerLine—a company

2  that makes employment decisions on behalf of Penney's—who Plaintiff alleges participated in

3  the decision to terminate her. (*See id.* ¶¶ 4–6). Penney's has moved to dismiss for failure to

4  arbitrate and asks the Court to compel arbitration.

5  **II.    LEGAL STANDARDS**

6         "A failure to exhaust non-judicial remedies must be raised in a motion to dismiss, and

7  should be treated as such even if raised as part of a motion for summary judgment."

8  *Inlandboatmens Union of the Pac. v. Dutra Grp.*, 279 F.3d 1075, 1082 (9th Cir. 2002) (citing

9  *Ritza v. Int'l Longshoremen's & Warehousemen's Union*, 837 F.2d 365, 368 (9th Cir. 1988)).

10  Such a motion is a "non-enumerated Rule 12(b) motion," not a motion under Rule 12(b)(1). *Id.*

11  at 1078 n.2 (citing *Ritza*, 837 F.2d at 368–69) (internal quotation marks omitted). "In deciding a

12  motion to dismiss for a failure to exhaust nonjudicial remedies, the court may look beyond the

13  pleadings and decide disputed issues of fact." *Wyatt v. Terhune*, 315 F.3d 1108, 1119–20 (9th

14  Cir. 2003) (citing *Ritza*, 837 F.2d at 369).

15  **III.    ANALYSIS**

16         The issue before the Court is whether FMLA claims are arbitrable under the arbitration

17  agreement in this case. Because the FMLA provides standards of conduct independent from the

18  provisions of any collective bargaining agreement ("CBA"), FMLA claims need not be

19  arbitrated under such agreements absent a clear and unmistakable waiver of the right to a judicial

20  forum to adjudicate FMLA claims. *See Wright v. Univ. Mar. Serv. Corp.*, 525 U.S. 70, 78–79

21  (1998) (holding that because federal statutory rights under the Americans with Disabilities Act

22  ("ADA") did not arise out of the CBA, the plaintiff's ADA claims were not arbitrable under the

23  CBA's general arbitration clause); *Mitchell v. Chapman*, 343 F.3d 811, 824 (6th Cir. 2003)

24  (applying *Wright* to FMLA claims). However, where an arbitration clause uses broad language

25  such as "any dispute" in cases where the waiver is entered into by the individual employee, and

1  not by a union on behalf of a class of employees, the "clear and unmistakable" standard does not

2  apply, and the waiver is broad enough to waive all statutory claims, even if not specifically

3  identified. *See Wright*, 525 U.S. at 397 (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S.

4  20 (1991)).

5        Penney's adduces a copy of its Binding Mandatory Arbitration Agreement ("BMAA"),

6  which is apparently electronically signed by Gann herself. (*See* BMAA, Feb. 22, 2010, ECF No.

7  5, at 13).  Rule 3 of the J.C. Penney Rules of Employment Arbitration ("Rules"), which the

8  BMAA explicitly incorporates, governs the scope of the requirement to arbitrate. (*See* Rules,

9  Rule 3, ECF No. 5, at 15).  Rule 3 exempts the following matters from arbitration:

10  unemployment compensation; workers compensation (except retaliation); pension and welfare

11  benefit plans (except that lost benefits may be recoverable as damages in arbitration); and NLRA

12  and similar union laws. (*See id.*, Rule 3.A.1–4).  All other matters, including the following, are

13  subject to arbitration: discrimination, retaliation for exercise of rights, breach of contract and

14  implied covenants, wrongful termination, constructive discharge, breach of common law

15  obligations or duties, exceptions to the at-will employment doctrine, and any such claim against

16  a supervisory or managerial employee alleged to have been acting within the scope of

17  employment. (*See id.*, Rule 3.B.1–8).  Plaintiff alleges "interference" under the FMLA. (*See* Am.

18  Compl. ¶ 22).  This claim does not fit within any of the categories that are explicitly non-

19  arbitrable under Rule 3.A, and the categories listed under Rule 3.B are not comprehensive. (*See*

20  *id.* Rule 3.b ("The parties agree to arbitrate *all* other claims under these Rules, including claims

21  for: . . . . " (emphasis added))).  Therefore, Plaintiff has personally waived her right to a judicial

22  forum to litigate her FMLA claim.

23        In response, Plaintiff disputes that she ever entered into the BMAA.  Plaintiff claims that

24  a human resources employee, Ms. Krupp, entered Plaintiff's electronic signature onto the BMAA

25  during Plaintiff's initial employee processing in Carson City, and that Plaintiff never signed the

1    BMAA electronically or otherwise.  Plaintiff claims that Krupp never informed Plaintiff that she

2    was entering into any arbitration agreement, much less explained the terms of the BMAA.

3    Plaintiff attests to these claims. (*See* Gann Decl., May 23, 2012, ECF No. 15-1, at 2).  Plaintiff's

4    former co-worker attests to having the same experience when Krupp processed her for

5    employment at Penney's. (*See* Wojtowicz Decl., May 23, 2012, ECF No. 15-1, at 5).

6           In reply, Penney's argues that the Court should not use the summary judgment standard

7    to decide its unenumerated 12(b) motion.  This is true, but regardless of the whether the same

8    burden-shifting regime applies as under a summary judgment motion, the Court does not simply

9    take a movant's claim of a valid arbitration agreement as true.  Rather, "[i]n deciding a motion to

10   dismiss for a failure to exhaust nonjudicial remedies, the court may look beyond the pleadings

11   and decide disputed issues of fact." *Wyatt*, 315 F.3d at 1119–20 (citing *Ritza*, 837 F.2d at 369).

12   It is therefore appropriate for the Court to examine factual matter adduced in order to determine

13   whether there is any valid arbitration agreement in this case.  In the present case, the issue is not

14   whether the precise type of claim Plaintiff brings is arbitrable under the BMAA—clearly it

15   is—but whether Plaintiff entered into the BMAA in the first instance.  Penney's claims that

16   Plaintiff did in fact personally sign the BMAA because every new Penney's employee is

17   required to log in with his or her password and electronically sign a list of documents, including

18   the BMAA, during an initial hiring process called "onboarding."  Sarah Abraham, a HR Senior

19   Manager for Penney's, attests to this general practice, though she does not attest to any direct

20   knowledge of the procedure that was used in Plaintiff's case. (*See generally* Abraham Decl.,

21   June 1, 2012, ECF No. 17, at 8).  Rita Krupp, the Penney's employee who Plaintiff attests signed

22   the BMAA on her behalf without explaining it to her or obtaining her assent, attests that Plaintiff

23   entered all information into the computer herself, including signing the BMAA. (*See* Krupp

24   Decl. ¶¶ 2–6, June 1, 2012, ECF No. 17, at 11).  She attests that "[n]o one other than Ms. Gann

25   would have been able to complete any of the forms noted above, as Ms. Gann's employee ID

Page 4 of  9

number and password would have been required [and] I do not know Ms. Gann's password."
(*Id.* ¶ 6). This, of course, discounts the possibility that Krupp had Plaintiff log in with her
password and then went through the required documents herself for efficiency. Also, Plaintiff's
declaration is directly to the contrary. Plaintiff alleges she never typed anything at all into a
computer, but that Krupp did it all for her. (*See* Gann. Decl. ¶ 4).

In summary, there is conflicting evidence whether Plaintiff signed the BMAA or
authorized Krupp to sign it electronically on her behalf, and the question is dispositive of the
present motion. Although the burden-shifting regime of summary judgment is not applicable,
the Court must still assess the facts. Because failure to exhaust is an affirmative defense,
Penney's bears the burden of proof on the issue. Because a determination of the question
required the Court's assessment of Plaintiff's and Krupp's credibility, the Court held an
evidentiary hearing.

At the hearing, Defendant produced Krupp, who testified on direct examination that she
had performed approximately 200 "onboarding" procedures for Penney's. She vaguely recalled
Gann's onboarding. She testified that Gann entered her social security number ("SSN") and
password into the computer herself to begin the process, and that Gann completed the entire
process herself with no problems. She testified that Gann seemed perfectly capable operating
the computer. She testified that she did not know if onboarding could be completed without
agreeing to the BMAA, because no one had ever refused to agree to it.

On cross-examination, Krupp admitted that it would be possible for her to enter a new
employee's information into the computer herself if the new employee gave her the SSN and
password, but denied that she had ever done so. Krupp repeatedly used the word "can't," but it
is clear that Krupp meant to indicate that such a practice was not permitted by Penney's, not that
it was impossible in practice.

Plaintiff produced Gann, who testified that Krupp had her sit at one of three computers

1   and enter her SSN and password.  After this, the computer was to generate an employee

2   identification number ("EIN"), but for some reason the computer would not generate an EIN.

3   On the second and successive attempts, Krupp entered Gann's SSN and password, which Gann

4   had written on the back of her employee identification card for Krupp.  After twenty minutes, the

5   computer eventually produced an EIN, which Krupp also wrote on the back of Gann's employee

6   identification card.  Krupp then completed the onboarding process for Gann.  Gann entered

7   nothing into the computer after that point, but rather Krupp "clicked through" each form, simply

8   telling Gann that she had to agree to several things.  Gann recalled only the dress code policy in

9   particular and testified that Krupp never read her the BMAA or indicated she was agreeing to

10   any arbitration agreement.

11       On cross-examination, Plaintiff admitted that her declaration submitted with her response

12   to the present motion was not completely accurate.  Although the declaration stated that she

13   never entered anything into the computer, she noted that she did enter her SSN and password

14   into the computer the first time, but that Krupp entered them in later and entered everything else.

15   Gann noted that she knew Krupp was completing various documents and agreeing to various

16   policies on her behalf, but claimed that Krupp did not sufficiently explain them.

17       Plaintiff produced one additional witness, Victoria Ross.  Ross testified that she had

18   worked for Penney's for one month.  During her onboarding with Krupp, she entered her own

19   SSN and password, but Krupp then did the rest for her because Ross had difficulty with the

20   computer due to an illness.  She testified that Krupp told her to read the documents she was

21   agreeing to but that she was never informed of any arbitration agreement.  She recalled only the

22   dress code policy and the parking policy.

23       On cross-examination, Ross noted that she was Gann's daughter.  She testified that two

24   other persons onboarded with her at the same time.  She noted that there was no problem with

25   the computer itself but that she was bad with computers.  She admitted she had used computers

before, including word processors and social media sites, for example. She eventually testified that her computer problems were due to an illness. She admitted she personally clicked on certain documents but could not recall which ones.

The Court finds that neither Gann nor Krupp is totally credible.[1] The Court finds that it is more probable than not that Krupp sat at the terminal next to Gann and entered the information for her, clicking on the various agreements. However, the Court also finds that even if this is true, it is more probable than not that Krupp sufficiently explained the documents to Gann or that Gann read them herself, and that Gann simply does not recall the arbitration agreement or does and refuses to admit it.

The remaining question is whether the BMAA is unconscionable. The Court finds that it is not. A federal court may determine whether an arbitration agreement is unconscionable under state law without contravening § 2 of the Federal Arbitration Act. *See Ferguson v. Countrywide Credit Indus., Inc.*, 298 F.3d 778, 782 (9th Cir. 2002) (citing *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)). Nevada law requires both procedural and substantive unconscionability:

> Generally, both procedural and substantive unconscionability must be present in order for a court to exercise its discretion to refuse to enforce a . . . clause as unconscionable. However, less evidence of substantive unconscionability is required in cases involving great procedural unconscionability. A clause is procedurally unconscionable when a party lacks a meaningful opportunity to agree to the clause terms either because of unequal bargaining power, as in an adhesion contract, or because the clause and its effects are not readily ascertainable upon a review of the contract.

*D.R. Horton, Inc. v. Green*, 96 P.3d 1159, 1162 (Nev. 2004) (internal quotation marks and footnotes omitted; alteration in original). "Where an arbitration agreement is concerned, the agreement is [substantively] unconscionable unless the arbitration remedy contains a 'modicum of bilaterality.'" *Id.* at 1165 (quoting *Ting v. AT&T*, 319 F.3d 1126, 1149 (9th Cir. 2003)).

---

[1]Ross's testimony is irrelevant and possibly constitutes inadmissible character evidence.

1    Here, the BMAA was a contract of adhesion and was therefore procedurally

2    unconscionable.  However the procedural unconscionability was not so great as to trigger the

3    requirement of a lesser showing of substantive unconscionability.  In any case, the BMAA was

4    not substantively unconscionable at all.  Under Rule 1, Penney's selects the program

5    administrator, and it has selected the American Arbitration Association ("AAA").  But Penney's

6    does not select the arbitrator.  The selection of the arbitrator is done according to a completely

7    bilateral procedure.  Under Rule 11, the AAA selects a panel of seven potential arbitrators,

8    which list it sends to the parties.  The panel is to be populated in the following order: former

9    federal district judges, former federal magistrate judges and state court judges, and licensed

10   attorneys with significant experience in employment law.  Each party may strike up to three

11   names form any panel, and the AAA will select the arbitrator from the remaining panel

12   members.  If conflicts of interest prevent all unstricken panel members from serving, the

13   procedure is repeated until an arbitrator is selected.  The arbitrator must use the Rules to

14   adjudicate the dispute.  Under Rule 13, if the cost of photocopying and mailing a response to a

15   discovery request will exceed $50, the requesting party must forward half the cost before

16   mailing.  If the cost of production and mailing documents in the designated form will exceed

17   $250, the responding party may require the requesting party to advance half the cost exceeding

18   $250.  In summary, the Rules apply equally to both sides, except that a complainant must pay

19   $75 to file a case under Rule 5, which is significantly less than the $350 a plaintiff must pay to

20   file a complaint in this Court.  And apart from a penalty for sanctionable conduct, which

21   provision applies equally to Penney's, an employee cannot be made to pay fees or costs beyond

22   the $75 filing fee and certain discovery costs.

23   ///

24   ///

25   ///

1

**CONCLUSION**

2      IT IS HEREBY ORDERED that the Motion to Dismiss and Compel Arbitration (ECF

3  No. 5) is GRANTED.

4      IT IS FURTHER ORDERED that the Motion to Extend Time (ECF No. 12) is

5  GRANTED.

6      IT IS FURTHER ORDERED that the Motion to Stay (ECF No. 13) is DENIED as moot.

7      IT IS FURTHER ORDERED that the Clerk shall close the case.

8      IT IS SO ORDERED.

9  Dated this 9th day of July, 2012.

10                                              _____
                                                        ROBERT C. JONES
11                                                 United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25